UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MELISSA ALVEAR, individually, and as parent
and natural guardian of J.A., an infant under
the age of fourteen years,

**MEMORANDUM & ORDER
18-CV-4255 (NGG) (CLP)**

Plaintiff,

-against-

SPECIAL PATROLMAN MOHAMED KAMEL,
Tax Registration No. 160282, SPECIAL
PATROLMAN JUAN CORDOBA, Shield No.
617, SPECIAL PATROLMAN HECTOR LOPEZ
and THE CITY OF NEW YORK,

Defendants.

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court is Defendants Mohamed Kamel, Juan
Cordoba, Hector Lopez (collectively, the "Officer Defendants"),
and the City of New York's (together with the Officer Defendants,
the "Defendants") Motion for Summary Judgment. (Not. of Mot.
(Dkt. 72); Mot. (Dkt. 75).) For the following reasons, the Motion
is GRANTED.

## I.   BACKGROUND

The following facts are undisputed except as noted and are taken
from the Defendants' Rule 56.1 Statement and Plaintiff Melissa
Alvear's Rule 56.1 Statement. Citations to a party's 56.1 state-
ment incorporate the evidentiary materials cited therein. Unless
otherwise noted, where a party's 56.1 statement is cited, that fact
is undisputed or the opposing party has not pointed to any evi-
dence in the record to contradict it. *See* E.D.N.Y. Local Civil Rule
56.1(c), (d).

On April 30, 2017, Plaintiff Melissa Alvear and her infant son JA
went with Alvear's mother, Yolanda Octavo, to Flushing Meadow

Park in Queens. (Defs. 56.1 St. (Dkt. 73) ¶¶ 1-4; Pl. 56.1 St. (Dkt. 76) ¶¶ 1-4.) The Officer Defendants, officers with the New York City Parks Department, were patrolling Flushing Meadow Park when they saw several unlicensed vendors selling grilled meat and other food items at a staircase entering the park. (Defs. 56.1 St. ¶¶ 15-16; Pl. 56.1 St. ¶¶ 15-16.) Ms. Octavo was near these vendors with a shopping cart. (Defs. 56.1 St. ¶¶ 5-6; Pl. 56.1 St. ¶¶ 5-6.) Defendant Cordoba recognized Ms. Octavo from a prior summons for illegal vending, for which she had previously received summons at least five times. (Defs. 56.1 St. ¶¶ 13, 17; Pl. 56.1 St. ¶¶ 13, 17.) As the Officer Defendants approached, the vendors and Ms. Octavo left the area. (Defs. 56.1 St. ¶¶ 19-20; Pl. 56.1 St. ¶¶ 19-20.)

The Officer Defendants pursued Octavo and caught up to her at a pedestrian island. (Defs. 56.1 St. ¶ 21; Pl. 56.1 St. ¶ 21.) They told Octavo she could not vend in the park, and stated they planned to issue a summons. (Defs. 56.1 St. ¶¶ 23-27; Pl. 56.1 St. ¶¶ 23-27.) After several minutes, Alvear arrived at the scene with JA in tow and began attempting to remove shopping bags from the cart; she explains that she was attempting to retrieve Octavo's speaker. (Defs. 56.1 St. ¶¶ 25-27; Pl. 56.1 St. ¶¶ 25-27.) Kamel and Cordoba told Alvear to stop and told her to watch her kids; Alvear cursed at Kamel and continued to try and retrieve the speakers. (Defs. 56.1 St. ¶¶ 28-33; Pl. 56.1 St. ¶¶ 28-33.)

The hectic scene that occurred next was captured on two videos taken by bystanders, as a crowd had gathered around the group. As Alvear held onto the cart and argued with the Officer Defendants, Kamel grabbed her arm and wrestled her to the ground. (First Video of Incident (Dkt. 74-9) at 1:15-1:25.) JA, who appeared to be trying to intervene on behalf of his mother, was knocked to the ground as well; after getting back up, he again tries to assist Alvear, but Lopez picked JA up and pulled him away from the altercation. (*Id.* at 1:15-1:30.) Meanwhile, Kamel

and Cordoba dragged Alvear across the ground; Alvear rolled on the ground and attempted to keep her hands under her in an apparent attempt to escape the officers' grasp. (*Id.* at 1:20-1:45; Second Video of Incident (Dkt. 74-10) at 0:00-0:12.) After these brief attempts, all three Officer Defendants placed their weight on Alvear's back and legs to pin her to the ground, and Cordoba placed both knees on Alvear. (First Video of Incident at 1:45-1:53.) The Officer Defendants held Alvear on the ground and tried to extricate her arms to handcuff her for approximately two minutes, until Kamel appears to produce handcuffs. (*Id.* at 1:50-4:15.) She was ultimately handcuffed by New York City police officers, rather than by any of the Officer Defendants. (Defs. 56.1 St. ¶ 54; Pl. 56.1 St. ¶ 54.)

Alvear was arrested for resisting arrest, pursuant to New York Penal Law 205.30, and disorderly conduct, pursuant to New York Penal Law 240.20, and brought to Queens Central Booking. (Defs. 56.1 St. ¶¶ 60-61; Pl. 56.1 St. ¶¶ 60-61.) She was ultimately charged with resisting arrest, as well as obstructing governmental administration, under New York Penal Law 195.05, attempted assault in the third degree, under New York Penal Law 110/120.00, and harassment in the second degree, under New York Penal Law 240.26. (Defs. 56.1 St. ¶ 63; Pl. 56.1 St. ¶ 63.) The charges were ultimately dismissed. (Defs. 56.1 St. ¶ 69; Pl. 56.1 St. ¶ 69.)

Alvear was treated at Northwell Forest Hills Hospital the day after the incident. (Northwell Health Records (Dkt. 77-10) at ECF 3.) She complained of neck and shoulder pain and was diagnosed with a cervical sprain, for which she was given pain medication. (*Id.* at ECF 8-9, 20.) JA was seen by a psychiatrist at Elmhurst Medical Center, where he was diagnosed with an adjustment disorder from having witnessed his mother's arrest. (Elmhurst Medical Records (Dkt. 77-11) at ECF 5.)

On July 27, 2018, Alvear filed a Complaint in this lawsuit. (Dkt. 1.) An Amended Complaint, the operative complaint at this stage, was filed on December 6, 2019. (Dkt. 26.) Following discovery, Defendants filed this Motion on December 16, 2022; Alvear filed an opposition (Opp. (Dkt. 78)), and Defendants filed a reply brief in further support (Reply (Dkt. 80).)

## II.   LEGAL STANDARD

Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[1] "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A "genuine" issue of fact is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a motion for summary judgment, the court must consider the facts "in the light most favorable to [the non-moving party]." *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). "In certain circumstances, video evidence may be so clear and unambiguous that a court deciding a summary judgment motion may rely on the video and need not give credit to assertions that are 'blatantly contradicted' by the video evidence." *Benny v. City of Long Beach*, No. 20-CV-1908 (KAM) (ST), 2022 WL 2967810, at *10 (E.D.N.Y. July 27, 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 378-80 (2007)). "On the other hand, if the video evidence does not conclusively resolve material fact issues, summary judgment based on that evidence alone is not appropriate." *Id.*

---

[1] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

4

If the party seeking summary judgment meets its burden of show-
ing that no genuine issue of material facts exists, "the nonmoving
party must come forward with admissible evidence sufficient to
raise a genuine issue of fact for trial in order to avoid summary
judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d
Cir. 2008) (citing *Celotex*, 477 U.S. at 322-23). To do so, the non-
moving party must cite to evidence in the record; "[a] party may
not rely on mere speculation or conjecture as to the true nature
of the facts to overcome a motion for summary judgment." *Hicks
v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010); *see also* Fed. R. Civ.
P. 56(c) ("A party asserting that a fact cannot be or is genuinely
disputed must support the assertion by . . . citing to particular
parts of materials in the record, including depositions, docu-
ments, electronically stored information, affidavits or
declarations, stipulations (including those made for purposes of
the motion only), admissions, interrogatory answers, or other
materials[.]"). They "cannot defeat the motion by relying on the
allegations in [their] pleading, or on conclusory statements, or
on mere assertions that affidavits supporting the motion are not
credible." *Gottlieb v. Cnty. Of Orange*, 84 F.3d 511, 518 (2d Cir.
1996). "It is not sufficient merely to assert a conclusion without
supplying supporting arguments or facts." *BellSouth Telecommu-
nications, Inc. v. W.R. Grace & Company-Conn.*, 77 F.3d 603, 615
(2d Cir. 1996).

## III. DISCUSSION

Alvear brings claims under 42 U.S.C. § 1983, for assault and bat-
tery against her, her false arrest and imprisonment, and
malicious prosecution; a claim for excessive force used against
Alvear and JA; an independent tort claim for battery against Al-
vear and JA; and independent tort claims for Alvear's false arrest
and imprisonment, and malicious prosecution. (Am. Compl. ¶¶
56-57, 59-80.)

### A.   False Arrest and False Imprisonment

Alvear's claims under section 1983 for false arrest and false imprisonment can each be defeated by a showing of probable cause. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."); *Kilburn v. Vill. of Saranac Lake*, 413 F. App'x 362, 363 (2d Cir. 2011) (Summary Order) (quoting *Weyant* and explaining that "[t]he same holds true for the false imprisonment claims because, under New York law, the claim is identical to a false arrest claim"). "Probable cause [to arrest] exists if police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." *United States v. Cole*, 26 F. App'x 45, 46-47 (2d Cir. 2001) (Summary Order).

Defendants argue that the officers had probable cause to arrest Alvear for resisting arrest, disorderly conduct, and obstructing governmental administration. (*See* Mot. at 7, 14.) With respect to obstruction of government administration, the court agrees.[2]

---

[2] Probable cause for any crime, "even for a crime other than the one identified by the arresting officer," is sufficient to defeat a claim of false arrest. *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016). The court therefore declines to reach whether probable cause existed for the other two argued crimes. Nonetheless, the court has serious concerns with the Defendants' argument regarding probable cause for disorderly conduct, which asserts that probable cause to arrest exists any time a private individual swears at a police officer, as Alvear did at one point during the interaction. (Mot. at 7.) New York's disorderly conduct statute encompasses a person who "[i]n a public place . . . uses abusive or obscene language, or makes an obscene gesture," but requires "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." N.Y. Penal Law § 240.20. Defendants do not point to any undisputed evidence of Alvear's *mens rea*, but

Obstructing governmental administration occurs when a person "intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference[.]" N.Y. Penal Law § 195.05. Refusing to follow directives from police officers supports probable cause for obstructing governmental administration. *See Marcavage*, 689 F.3d at 109; *see also Johnson v. City of New York*, No. 05-CV-7519 (PKC), 2008 WL 4450270, at *10 (S.D.N.Y. Sept. 29, 2008) ("An officer has probable cause to arrest for obstructing governmental administration where a person refuses to comply with an order from a police officer.").

It is undisputed that the Officer Defendants repeatedly instructed Alvear to stop attempting to retrieve property from Octavo's shopping cart. (*See* Defs. 56.1 St. ¶¶ 28-30; Pl. 56.1 St. ¶¶ 28-30.) Alvear did not comply with these orders. (*See* Defs. 56.1 St. ¶¶

---

merely cite two cases to support their argument that probable cause to arrest Alvear for disorderly conduct was reasonable. (Mot. at 7.) Neither case persuades the court. In *Marcavage v. City of New York*, 689 F.3d 98, 110 (2d Cir. 2012), the Second Circuit found probable cause supported arrests for obstruction of governmental administration where "Plaintiffs rejected 17 directives (by three officers)," and declined to reach the disorderly conduct arguments for the same reasons expressed herein. In *Smith v. City of New York*, No. 18-CV-5079 (MKV), 2021 WL 4267525, at *10 (S.D.N.Y. Sept. 20, 2021), the court stated that the undisputed fact that the plaintiff's obscene statements drew the attention of bystanders and neighbors "made it objectively reasonable to believe that the conduct went beyond an individual dimension and that Plaintiff had the requisite intent for disorderly conduct." Although a crowd gathered to watch (and record) Alvear's interaction with the Defendant Officers, they did so prior to her single use of an obscenity and were almost certainly—and at least disputedly—gathering to observe the violent and hectic arrest of a mother in front of her child by three Parks Department officers. The court will not adopt Defendants' argument that a single use of an obscenity during a heated interaction with police officers—without any evidence of the requisite state of mind—supports probable cause to arrest.

28-30; Pl. 56.1 St. ¶¶ 28-30.) This is sufficient to establish probable cause for obstructing governmental administration.

In response, Alvear points out that, under New York law, obstructing governmental administration requires a showing that the officers' actions with which the suspect interfered were legitimate. (Opp. at 5-6.) "A defendant may not be convicted of . . . interfering with an officer in the performance of an official function unless it is established that the police were engaged in authorized conduct." *People v. Greene*, 221 A.D.2d 559, 560 (2d Dep't 1995). Alvear argues that, even if the Officer Defendants were correct in stopping Octavo and seizing the property used in vending, the relevant city regulations did not plainly authorize the Officer Defendants to seize Octavo's personal property (the speakers) merely because it was in Octavo's shopping cart. (Opp. at 5-6 (citing Dep't of Parks and Recreation's Regulations (Dkt. 77-12).) But even assuming the Officer Defendants were not entitled to seize the speakers, Alvear's refusal to follow their directives was not justified. As shown on the video, the scene grew increasingly hectic, with JA and Alvear attempting to grab hold of the shopping cart as the Officer Defendants attempt to interview Octavo. (First Video of Incident at 0:00-1:10.) The Officer Defendants were within their authority to order Alvear to step away and calm down JA so as to secure the situation. Alvear's refusal to do so supported probable cause for obstructing governmental administration.

Accordingly, as the undisputed facts establish that the Officer Defendants had probable cause to arrest for obstructing governmental administration, Defendants' motion for summary judgment on the false arrest and false imprisonment claims is GRANTED.

**B.  Malicious Prosecution**

Similar to false arrest and false imprisonment, a claim for malicious prosecution requires a showing of a lack of probable cause.

8

*Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) ("To establish a malicious prosecution claim under New York law, a plaintiff must prove . . . the lack of probable cause for commencing the [criminal] proceeding[.]"). "Probable cause in the context of malicious prosecution," also known as probable cause to prosecute, "is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Celestin v. City of New York*, 581 F. Supp. 2d 420, 433 (E.D.N.Y. 2008) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994)). Unlike the claims discussed above, however, the court must "separately analyze the charges claimed to have been maliciously prosecuted" to determine whether probable cause to prosecute existed for each. *Maldonado v. City of New York*, No. 11-CV-3514 (RA), 2014 WL 787814, at *7 (S.D.N.Y. Feb. 26, 2014) (quoting *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991)).

Alvear was ultimately charged with obstructing governmental administration, resisting arrest, attempted assault in the third degree, and harassment in the second degree. (Defs. 56.1 St. ¶ 63; Pl. 56.1 St. ¶ 63.) Where there is probable cause to arrest on a crime, a party bringing a claim for malicious prosecution may only show lack of probable cause by pointing to exculpatory facts which became known to the officer or prosecutor subsequent to that arrest. *D'Angelo v. Kirschner*, 288 F. App'x 724, 726 (2d Cir. 2008) (Summary Order) ("Ordinarily, in the absence of exculpatory facts which became known after an arrest, probable cause to arrest is a complete defense to a claim of malicious prosecution."). As already discussed, the Officer Defendants had probable cause to arrest for obstructing governmental administration. Alvear points to no such exculpatory facts which would change the probable cause analysis.

The other two charges are more difficult for the Defendants, particularly attempted assault, for which they rely on a moment in the video where Alvear purportedly "pushed" Cordoba.[3] (*See* Mot. at 14; Defs. 56.1 St. ¶ 44; Pl. 56.1 St. ¶ 44.) Nonetheless, to prevail on a section 1983 claim for malicious prosecution, Alvear must also show a "sufficient post-arraignment liberty restraint to implicate [her] Fourth Amendment rights." *Rohman v. N.Y.C. Trans. Auth.*, 215 F. 3d 208, 215 (2d Cir. 2000); *see also Herrera-Amador v. N.Y.C. Pol. Dep't*, No. 16-CV-5915 (NGG) (VMS), 2021 WL 3012583, at *15 (E.D.N.Y. July 16, 2021) (adopting R&R). Even where a defendant is not held in custody, the obligation to return to court for hearings related to the charges is sufficient to meet this element. *Rohman*, 215 F.3d at 215-216. Nonetheless, there must be an "independent deprivation of liberty resulting from the prosecution," and where the defendant has a separate obligation to make court appearances on charges which are supported by probable cause, they cannot support a claim under

---

[3] In particular, the court finds the charge of attempted assault baffling. Defendants argue that at one point in the altercation, Alvear "pushed" Cordoba with her leg; Alvear disputes this claim. (*See* Mot. at 14; Defs. 56.1 St. ¶ 44; Pl. 56.1 St. ¶ 44.) The altercation begins with Kamel bringing Alvear to the ground, and for the vast majority of it, Alvear is either pinned to the ground or has all her limbs being held by the three Officer Defendants. (*See* First Video of Incident at 1:20-1:55; Second Video of Incident at 0:00-0:20.) Defendants rely on three seconds of this video where, while Alvear appears to be almost face down, mostly held off the ground by Kamel, and facing away from Cordoba, her flailing right leg makes incidental contact with him. (*See* First Video of Incident at 1:23-1:26.) Attempted assault requires "intent to cause physical injury to another person." N.Y. Penal Law §§ 110, 120.00. The court finds it dubious that based on these videos and Cordoba's own experience of the incident, "a reasonable man" would believe there were "lawful grounds for prosecuting" Alvear for attempted assault. *Celestin*, 581 F. Supp. 2d at 433.

section 1983. *Coleman v. City of New York*, 688 F. App'x 56, 57-58 (2d Cir. 2017) (Summary Order).[4]

Alvear was released on her own recognizance, but made several appearances in court before the charges were ultimately dismissed. (*See* Criminal Court Transcripts (Dkt. 74-14) at 3, 14.) Alvear's court appearances were, at least in part, attributable to the obstructing governmental administration charge, which the court has already determined was supported by probable cause, and by an unrelated desk appearance ticket which was resolved simultaneously. (*See generally id.*) Accordingly, she has not shown a restraint on liberty caused by the attempted assault or harassment charges which may not have been supported by probable cause.

Accordingly, Defendants' motion for summary judgment on Alvear and JA's claims for malicious prosecution is GRANTED.

### C. Excessive Force

Next, the Defendants move for summary judgment on the claims that the Officer Defendants used excessive force on Alvear and JA. As shown on the video, the force used in effecting Alvear's

---

[4] Alvear points to *Perez v. Duran*, 962 F. Supp. 2d 533, 542 (S.D.N.Y. 2013), in which the district court stated that "there is no case that supports the proposition that simply because the plaintiff was also required to appear in court on an unrelated matter the appearance that was required for the felony charge relevant to this case is not a seizure within the meaning of the Fourth Amendment." (Opp. at 19.) While this may have been true at the time, the Second Circuit has since decided *Coleman*, and district courts have followed that case to hold that "[i]t is the plaintiff's burden to show that the deprivation of liberty was the result of the allegedly malicious prosecution, and not some other charge that is supported by probable cause." *Mortimer v. Wilson*, No. 15-CV-7186 (KPF), 2020 WL 3791892, at *13 (S.D.N.Y. July 7, 2020) (citing *Coleman* 688 F. App'x at 58); *see also Warner v. Freeman*, No. 14-CV-1192 (DFM), 2017 WL 4227655, at *3 (D. Conn. Sept. 22, 2017) (granting summary judgment where plaintiff's court appearances on arrest for criminal trespass were also attributable to separate charges supported by probable cause).

arrest can be summarized as follows. *First*, Kamel used an arm-bar technique to bring Alvear rapidly to the ground.[5] (First Video of Incident at 1:15-1:25.) As he did so, he forced Alvear into JA, who was standing next to her; JA fell to the ground as a result of this contact. (*Id.*) Attempting to disentangle Alvear from JA, Kamel dragged Alvear several feet across the pavement, at which point he was able to flip her onto her stomach in an attempt to cuff her hands behind her back. (*Id.* at 1:20-1:30.) Lopez picked up JA and placed him down several feet away before returning to Alvear. (*Id.* at 1:25-1:30.) Alvear returned to her back as the Officer Defendants continued to drag her in an attempt to gain control over her hands, then ultimately rolled back onto her stomach with her hands underneath her body. (*Id.* at 1:30-1:45.) Cordoba climbed onto Alvear's buttocks and lower back, using his left knee to pin her to the ground; Kamel continued to tug at Alvear's hands and pinned her shoulders; and Lopez pinned her legs. (*Id.* at 1:40-2:00.) Alvear was held in this position for approximately two minutes, with assorted tussling, until NYPD officers arrived on the scene and she was successfully placed in handcuffs. (*Id.* at 2:00-4:30.) The Officer Defendants never struck Alvear during this series of events. (*See generally id.*; *see generally* Second Video of Incident; *see also* Pl. 56.1 St. ¶ 40 (conceding that Kamel did not "kick, punch or strike Alvear, nor did he use any weapon or any device during the course of the arrest).) Both Octavo and JA himself testified that the incident resulted in a bruise to JA's ribs, resulting from an Officer Defendant's elbow (likely Kamel's) and other cuts and scrapes. (Opp. at 14.)

---

[5] Defendants describe it as "plac[ing] her on the ground," (Defs. 56.1 St. ¶ 37), while Alvear contends that Kamel "threw her" onto the ground. (Pl. 56.1 St. ¶ 37.) As is often the case, the truth is somewhere in between, but Alvear's version is closer to accurate—there was nothing gentle about the action, as is implied by the Defendants' phrasing.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* at 395. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and is an objective inquiry. *Id.* at 396-97. In assessing reasonableness, the court must consider "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015).

The most serious of the crimes for which Alvear was arrested and with which she was ultimately charged is a class A misdemeanor, carrying a maximum of one year imprisonment. *See* N.Y. Penal Law § 10.00(3)-(4); *id.* § 120.00 (assault in the third degree, class A misdemeanor); *id.* § 195.05 (obstructing governmental administration in the second degree, class A misdemeanor); *id.* § 205.30 (resisting arrest, class A misdemeanor); *id.* § 240.20 (disorderly conduct, violation); *id.* § 240.26 (harassment in the second degree, violation). These are, undoubtedly, not particularly serious charges. *See Brown*, 798 F.3d at 102 (describing disorderly conduct offense as of "unquestionably slight" severity); *McKnight v. Vasile*, 2017 WL 1176051, at *25 (W.D.N.Y. Mar. 30, 2017) ("[O]bstructing governmental administration

and resisting arrest—Class A misdemeanors punishable by terms of imprisonment of not more than one year—are generally not serious crimes[.]"). But as Alvear began to struggle with the Officer Defendants for control of Octavo's shopping cart, JA got involved in the altercation and a crowd began to gather and take videos. In such a context, the Officer Defendants had a "significant" interest in crowd control during their stop of Octavo despite the minor infractions purportedly at issue. *Brayshaw v. City of Burlington*, No. 13-CV-253, 2015 WL 1523019, at *9 (D. Vt. Apr. 3, 2015) (quoting in parenthetical *Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 612 (6th Cir. 2005)).

Although the Officer Defendants needed to control the situation as the crowd gathered, there is no indication from the record that Alvear posed any threat to the Officer Defendants or anyone else. The Officer Defendants' memo books claim that Alvear was "bashing" them with the cart before they initiated the arrest, but the video plainly shows a tug-of-war during which the cart barely moved, and any contact with the Officer Defendants was *de minimis* and incidental. (Memo Book Entries (Dkt. 77-9) at 4.)[6] In an apparent concession that the video did not support this version of events, the Defendants do not argue that Alvear presented any threat to the Officer Defendants, and indeed do not even attempt

---

[6] Alvear points out that the Defendant Officers' entries in their memo books for the date in question are almost identical in wording, and the Defendant Officers admitted to preparing the entries together. (Opp. at 10.) Alvear argues that such behavior gives rise to an inference of unlawful conduct and the Defendant Officers' intent to conceal such unlawful conduct. (*Id.* at 11.) Although the court generally agrees that such coordinated activity by officers following a violent incident raises serious concerns of impropriety and potential fraud, the video in this case is conclusive as to the events at the stop, and the court did not rely on the Defendant Officers' memo book entries in concluding that the force used was not legally excessive.

to justify the charge of Attempted Assault on the basis of "bash-ing," instead pointing to the "push[]" discussed and rejected above. (Mot. at 14.)

Alvear concedes, though, that she was resisting arrest, in partic-ular by attempting to keep her hands in front of her body to avoid being handcuffed. (*See* Pl. 56.1 St. ¶¶ 39, 41-43.) Courts have repeatedly held that law enforcement officers' use of force to ac-cess and cuff an uncooperative arrestee's hands, including the use of arm bar techniques, are reasonable in such a context. *See Bozung v. Rawson*, 439 F. App'x 513, 520-21 (6th Cir. 2011) (holding that force was reasonable where plaintiff failed to comply with instructions to place his hands behind his back); *Gino v. Bender*, No. 09-CV-13261, 2011 WL 1792643, *3 (E.D. Mich. 2011) (holding that force was reasonable where plaintiff failed to comply with repeated orders to get on the ground, pulled her arm away, and took a combative posture to-ward officer); *Cardinal v. Allain*, No. 05-CV-107 (JJB), 2007 WL 3256447, *4 (M.D. La. 2007) (holding that arm bar technique was not excessive where plaintiff "jerked away" from officer's at-tempts to handcuff him). The amount of force used in the video—pulling Alvear to the ground, struggling with her as she tried to evade arrest, and pinning her to the ground until hand-cuffs could be applied—does not exceed that necessary to effectuate her arrest.[7]

---

[7] Defendants also argue that Alvear's *de minimis* injuries illustrate, as a matter of law, that the force used was reasonable. (Mot. at 18-19). The Second Circuit has recently rejected this argument, explaining that "[a]ny such holding . . . would grant a windfall to officers who commit misconduct but could escape liability based upon the hardiness of their victims." *Ketcham v. City of Mt. Vernon*, 992 F.3d 144, 150-51 (2d Cir. 2021). For the purposes of liability, as opposed to damages, the relevant question is the Officer Defendants' actions, not their results.

Regarding the excessive force claim brought by Alvear on behalf of JA, both parties agree that the relevant legal standard is governed by the Fourteenth Amendment, because JA was not "seized" under the meaning of the Fourth Amendment. (Mot. at 21; Opp. at 15.) Alvear asserts that such a claim must be analyzed under the standard set forth in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), which requires a showing "that the force purposely or knowingly used against [the plaintiff] was objectively unreasonable." *Id.* at 396-97. Assuming this is the proper standard does not aid Alvear. The Officer Defendants are visible throughout the videos, and although JA is regularly in the thick of the action—primarily trying to pull various Officer Defendants off of his mother—the only force "purposely" used against him at any point is when Lopez picked him up in an attempt to remove him from the altercation. Although the court feels strongly that an infant child should not ever be injured in an interaction with police, his cuts and bruises appear indisputably to have resulted from unintentional contact as the Officer Defendants struggled with Alvear. This is insufficient.

Accordingly, Defendants' motion for summary judgment on Alvear's claim of excessive force is GRANTED.

That the court concludes the Officer Defendants' actions were technically permitted under the Constitution should not be misconstrued as approval of their choices. Although their use of force was limited to that necessary to effectuate Alvear's arrest despite her attempts to resist, the choice to arrest and manner thereof (and therefore escalate the situation into a violent one) themselves were dubious—not as a matter of law, but as a matter of professionalism and policing policy. Confronted with a minor situation of suspected unpermitted vending and the vendor's irate daughter, well-trained officers could have explored the myriad options that fall between telling Alvear to calm down (their brief first attempt) and violently arresting and subduing her. At no

point did the Officer Defendants attempt to understand the nature of Alvear's concerns or address them in a manner intended to deescalate the situation; the member of the community with whom they were interacting was expected to immediately comply with their orders or face the physical consequences. And despite defense counsel's attempts to minimize the events, the video shows a violent encounter in which the *three* Officer Defendants use significant physical force to subdue an individual smaller woman who posed no threat. They rapidly took Alvear to the ground, dragged her several feet, and then used their collective weight to pin her to the ground for a period of minutes. All of this occurred in front of her two minor children, one of whom was visibly distraught and attempting to intervene, despite being dwarfed by the three adult Officer Defendants.

It appears that the only skill the Officer Defendants could bring to bear on the events was force. Although the Defendants have prevailed on their motion for summary judgment, these events embarrass the Officer Defendants, the City of New York, and the training the City provides to law enforcement officers across its various departments. The public deserves better.

### D. State Tort Claims

Having dismissed all of Alvear's federal claims, the court declines to exercise supplemental jurisdiction over her remaining state law tort claims for assault and battery, false arrest and imprisonment, and malicious prosecution. "The district court[] may decline to exercise supplemental jurisdiction over a claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367. Although such dismissal is not mandatory, "the Second Circuit has held that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine will point toward declining to exercise jurisdiction over the remaining state-law claims." *Guillen v. City*

*of New York*, 625 F. Supp. 3d 139, 163 (S.D.N.Y. 2022) (quoting *Kelsey v. City of New York*, 306 F. App'x 700, 703 (2d Cir. 2009)). The court sees no factor related to "judicial economy, convenience, fairness, and comity," *id.*, which would favor retaining jurisdiction over these claims.

Accordingly, Defendants' motion for summary judgment on Alvear's state law tort claims is GRANTED.

## IV. CONCLUSION

For the aforementioned reasons, Defendants motion for summary judgment is GRANTED.

SO ORDERED.

Dated:     Brooklyn, New York
           August 28, 2023

                                        s/Nicholas G. Garaufis
                                        _____
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge